UNITED STATES, Appellee

v.

Carinel PRITCHARD, Jr., Specialist
U.S. Army, Appellant.

No. 95–0945.
Crim. App. No. 9301648.

U.S. Court of Appeals for
the Armed Forces.

Argued March 27, 1996.

Decided Sept. 24, 1996.

For Appellant: *Captain Walter R. Dukes* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker, Major J. Frank Burnette* (on brief).

For Appellee: *Captain Kenneth D. Albert* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak, Major Anthony P. Nicastro, Captain Eugene E. Baime* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On September 23, 1993, appellant was tried by a military judge sitting alone as a general court-martial at Fort Drum, New York. Pursuant to his pleas, he was found guilty of willfully disobeying a lawful order (3 specifications), sodomy, and aggravated assault (2 specifications), in violation of Articles 92, 125, and 128, Uniform Code of Military Justice, 10 USC §§ 892, 925, and 928, respectively. The military judge sentenced him to a dishonorable discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted pay grade. On December 22, 1993, the convening authority approved the sentence. On March 31, 1995, the Court of Criminal Appeals affirmed in an unpublished opinion.

On September 8, 1995, this Court granted review on the following question of law:[1]

WHETHER, ASSUMING, ARGUENDO, THAT CAPTAIN HEAP'S ORDER DID INCLUDE THE PROHIBITION AGAINST ENGAGING IN SODOMY WITHOUT A CONDOM, THIS ORDER WAS NOT A LAWFUL MILITARY ORDER.

We also specified the following question for review:

WHETHER THE GOVERNMENT CAN LEGALLY ORDER AN HIV–INFECTED INDIVIDUAL TO WEAR/USE A

---

1. We heard oral argument in this case at the United States Military Academy at West Point, New York, on March 27, 1996, at the invitation of the Department of Law, United States Military Academy, and without objection from the parties involved. *See* Foundation of the Federal Bar Association, *Equal Justice Under Law: The Supreme Court in American Life 15–18* (1965); *see also* O'Brien, *Storm Center: The Supreme Court in American Politics* 78, 135–40 (2d ed.1990). This procedure is similar to the well-established practice of the United States Court of Appeals for the Eighth Circuit which holds hearings at various law schools within its circuit.

The United States Court of Appeals for the Armed Forces conducts a hearing such as this outside its permanent courthouse in Washington, D.C., as part of its "Project Outreach," a public awareness project which demonstrates not only the operation of a Federal appellate court but also the quality and effectiveness of the criminal justice system of our Armed Services, the Uniform Code of Military Justice (Arts. 1–146, 10 USC §§ 801–946, respectively). It is hoped that the thousands of students, service persons, military and civilian attorneys, and members of the American public who witness these hearings will realize that America is a democracy that can maintain an Armed Force instilled with the appropriate discipline to make it a world power and yet afford the members of that Armed Force a fair and impartial justice system which does provide the full protection of the Constitution of the United States and Federal law to its members.

CONDOM WHEN ENGAGING IN SEXUAL INTERCOURSE WITH HIS/HER SPOUSE.

We hold that the record of trial in this guilty-plea case clearly establishes that Captain Heap gave a lawful order to appellant to refrain from engaging in any type of sexual intercourse, including sodomy without a condom. *See generally Parker v. Levy*, 417 U.S. 733, 761, 94 S.Ct. 2547, 2564, 41 L.Ed.2d 439 (1974).

The Court of Criminal Appeals found the following facts concerning appellant's admitted offenses:

The charges arose after the appellant tested positive for the Human Immunodeficiency Virus (HIV). Immediately upon being notified of his illness, and on two subsequent occasions, appellant was counseled by medical personnel concerning the nature of the disease and his responsibility to prevent transmission of the infection to others. Appellant signed the written counseling form used to detail this information. Appellant's commander subsequently issued a "safe sex" order. The written order incorporated the earlier medical counseling and warned that violations of either could result in punitive action.

Appellant pleaded guilty, inter alia, to willful disobedience of his commander's order by not wearing a condom while engaging in sodomy and for failure to advise his sodomy partner of his HIV infection. The appellant now attacks the providence of his plea because there is no factual basis that the order required him to advise prospective "sodomy" partners of his HIV status and that it did not require him to wear a condom during the act of sodomy. We disagree.

The military judge conducted a thorough, searching inquiry into the providence of the appellant's pleas of guilty. He identified and fully explored the issue raised by appellant concerning the wording of the order. The appellant insisted several times during the inquiry that he understood the "safe sex" order to include the requirement to advise sodomy partners of his infection and to wear a condom during sodomy. The military judge correctly accepted the appellant's understanding of the order. We conclude that the military judge properly accepted appellant's plea of guilty. Rule for Courts–Martial 910(e); *United States v. Davenport*, 9 MJ 364 (CMA 1980); *United States v. Care*, 18 USCMA 535, 40 CMR 247 (1969).

Unpub. op. at 1–2.

Prosecution Exhibit 1 (page 6 of 7), a copy of the order given to appellant, states in part:

8. Date and Circumstances

The purpose of this command counseling is to inform you of the DA [Department of the Army] and command policy regarding your responsibilities as a result of testing positive for the Human Immunodeficiency Virus (HIV) antibody. *This counseling supplements and complements the Preventive Medicine counseling you received.*

9. Date and Summary of Counseling

I have been advised that you were counseled by Preventive Medicine personnel concerning your diagnosis of HIV positivity, the risk this condition poses to your health, as well as the risk you pose to others. *You were advised by medical personnel as to necessary precautions you should take to minimize the health risk to others as a result of your condition.* While I have great concern for your situation and need, in my capacity as commander, I must also be concerned with, and ensure the health, welfare, and morale of the other soldiers in my command. Therefore, I am imposing the following restrictions:

a. *You will verbally advise all prospective sexual partners of your diagnosed condition prior to engaging in any sexual intercourse. You are also ordered to use condoms should you engage in sexual intercourse with a partner.*

b. You will not donate blood, sperm, tissues, or other organs since this virus can be transmitted via blood and body fluids.

c. You will notify all health care workers of your diagnosed condition if you seek medical or dental treatment, or accident requires treatment. If you do not under-

stand any element of this order, you will address all questions to me. *Failure on your part to adhere to your Preventive Medicine counseling or the counseling I have just given you will subject you to administrative separation and/or punishment under the UCMJ, as I see fit.*

(Emphasis added.)

Prosecution Exhibit 1 (page 4 of 7) also contains a copy of the patient counseling advice given to appellant and referred to above, which states:

E.   Although I may have no symptoms presently, I may still transmit the infection to others through sexual intercourse, sharing of needles, donated blood or blood products, and *possibly through exposure of others to saliva through oral-genital contact or intimate kissing.* I have been informed that transmission of HIV infection through sexual intercourse can be avoided only through abstinence. If I cannot abstain, then I must engage only in protected sexual relations (i.e. using a condom). Males must always use a condom and females must insist that their partners use condoms. While the ability of condoms to prevent transmission of infection is unproved *they may reduce the chance of* transmission and I must always use them or insist on their use during all sexual encounters.

(Emphasis added.)

---

As a preliminary matter, we note that appellant initially suggests that the order he allegedly violated did not "constitute[ ] an order to advise or wear a condom while

engaging in oral sodomy." He contends that Captain Heap's order only applied to acts of "sexual intercourse" that he might engage in. He asserts that "[s]odomy is clearly a wholly different course of conduct and cannot logically be viewed as being encompassed within the meaning of 'sexual intercourse.'" Final Brief at 3 n. 1. Consequently, he implies that his orders' conviction based on his act of oral sodomy with H.B. (specification 2, Charge I) cannot be lawfully sustained. We disagree.

As a starting point, we note that no question exists that appellant admitted that his commander's order included an order to wear a condom if he engaged in oral sodomy. Appellant acknowledged that he understood his commander's order to include wearing a condom during "all sexual acts." He further admitted that he construed his commander's order in light of his prior medical counseling that oral sex could transmit HIV. Finally, a copy of the now-challenged order and an earlier Preventive Medicine Advice form admitted as part of prosecution exhibit 1 clearly indicate that "any sexual intercourse" for the purpose of this order includes oral sodomy.

■ Nevertheless, we note that sexual intercourse is particularly alleged in the specifications at issue,[2] and the act of sodomy was considered by the military judge as the basis of one of the orders' violations. An argument based on a variance between the offense alleged and the offense proved might be made in this case. *See generally United States v. Harris*, 8 MJ 52 (CMA 1979). A long line of decisions by this Court, however, rejects finding an improvident plea where the offense pleaded to is "closely related" to the offense charged. *See United States v. Epps*, 25 MJ 319, 323 (CMA 1987) (larceny/receiv-

2.  SPECIFICATION 1: In that SPC Carinel Pritchard Jr., U.S. Army, having received a lawful command from CPT Michael Heap, his superior commissioned officer, then known by the said SPC Pritchard to be his superior commissioned officer, to verbally advise all prospective sexual partners [D.P.] of his diagnosed condition prior to engaging in any sexual intercourse and to use condoms in sexual intercourse with any partner, or words to that effect, did, at Loweville, NY, between on or about 1 April 1992 and on or about 31 January 1993, willfully disobey the same.

SPECIFICATION 2: In that SPC Carinel Pritchard Jr., U.S. Army, having received a lawful command from CPT Michael Heap, his superior commissioned officer, then known by the said SPC Pritchard to be his superior commissioned officer, to verbally advise all prospective sexual partners [H.B.] of his diagnosed condition prior to engaging in any sexual intercourse and to use condoms in sexual intercourse with any partner, or words to that effect, did, at Watertown NY, between on or about 1 March 1993 and on or about 31 May 1993, willfully disobey the same.

ing stolen property); *United States v. Cooper–Tyson*, 37 MJ 481 (CMA 1993) (marijuana/methamphetamene). In this sense, we conclude that failure to wear a condom or advise a sexual partner about a communicable disease prior to sexual intercourse is "closely related" to failure to do the same prior to another form of sexual connection.

■ In addition we note that this technical variance problem arises for the first time on appeal. In *United States v. Sell*, 3 USCMA 202, 206, 11 CMR 202, 206 (1953), this Court established a different rule for assessing the legal sufficiency of specifications so challenged. This Court said:

> Because there still remains some uncertainty about the tests to be applied in ascertaining the sufficiency of specifications, we believe it well to reiterate what we have previously announced. The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Furthermore, when the pleadings have not been attacked prior to findings and sentence, it is enough to withstand a broadside charge that they do not state an offense, *if the necessary facts appear in any form or by fair construction can be found within the terms of the specification.* For a certainty, appellate tribunals should not permit a pleading to be challenged for the first time on appeal merely because it is loosely drawn.

(Emphasis added.)

Admittedly, the words sodomy or oral sodomy are not expressly included in the specification at issue before us. However, the phrase "sexual intercourse" can be reasonably understood to include sodomy and oral sodomy. *See United States v. Scoby*, 5 MJ 160, 166 (CMA 1978); *see also Commonwealth v. Bucaulis*, 6 Mass.App.Ct. 59, 373 N.E.2d 221, 226 (1978). Moreover, such a construction is most appropriate where other words or phrases in the specifications suggest a broad meaning be given the words of the safe-sex order, *i.e.*, "all prospective sexual partners"; "any sexual intercourse"; "with any partner." Finally, the general qualifier "or words to that effect" suggests that the safe-sex order in question is not to be considered as being alleged verbatim in the specification. In this light, we reject any suggestion of variance in this case as unwarranted.

■ Turning now to the first granted issue, appellant argues that violations of his commander's order to wear a condom during sexual intercourse could not be lawfully prosecuted under Article 90. He contends that his order constituted no more than an exhortation not to commit a crime (aggravated assault under Article 128), which is not within the ambit of Article 90. *See* para. 14c(2)(a)(iii), Part IV, Manual for Courts–Martial, United States, 1984 (an order given for the sole purpose of increasing the penalty for an offense which it is expected the accused may commit is not punishable under this Article). He also argues, apparently on public policy grounds, that his commander's order was unlawful because it purports to regulate the commission of an act that is already a crime.

Appellant pleaded guilty to these orders' offenses and waived any potential defenses to them based on paragraph 14c(2)(a)(iii). *See* RCM 910(j), Manual, *supra.* Moreover, we agree with the Government that the orders admittedly violated by appellant were specific mandates to protect military and public health, which went far beyond exhorting him not to commit aggravated assault. *See United States v. Traxler*, 39 MJ 476, 479 (CMA 1994). Finally, as for appellant's public policy argument, we find it specious on its face and unsupported as a matter of law. *See generally United States v. Johnson*, 30 MJ 53, 56 (CMA 1990): "[T]he military services and society at large have a compelling interest to ensure that those who defend the

nation remain healthy and capable of performing their duty."

■ The final, specified issue concerns the propriety of appellant's conviction for unprotected sexual intercourse with his wife in violation of his commander's safe-sex order (specification 1 of Charge I). This question has obvious constitutional implications, but they need not be addressed in this case. *See generally Parker v. Levy,* 417 U.S. at 758–59, 94 S.Ct. at 2562–63; *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *see* D. Schlueter, *Military Criminal Justice: Practice and Procedure* § 2–9D (3d ed.1992). Appellant conceded this issue at trial.

The military judge expressly stated his concern whether "a commander can give an order to an accused to wear condoms with his wife, because that might interfere with the constitutionally protected right to procreate." He also noted that "both sides" agreed it "would be a lawful order because of potential adverse-extremely adverse effects upon the spouse, perhaps even the military, tangentially through medical care that might be provided, perhaps...." Finally, appellant, on questioning by the military judge, readily agreed that, although "a commander normally can't interfere with marital relations," the military's interest in preventing egregious injury to his spouse and transmission of the disease to the civilian community justified this order, so it was valid. To the extent that balancing competing interests is involved to resolve this delicate constitutional question (*see Parker v. Levy, supra* at 755, 94 S.Ct. at 2561), we find no plain error exists in this case. *See United States v. Olano,* 507 U.S. 725, 732–35, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993).

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX, Judges CRAWFORD and GIERKE, and Senior Judge EVERETT concur.